

**Transportation Compliance Experts, Inc.**
*4851 Wharf Parkway – Unit D-226*
*Orange Beach, AL  36561*
*251-923-4264 (Office)*

*Jacob (Jake) Davis*
*DOT Compliance Expert*
*334-657-1088(Cell)*
*Jake@TransportationSafetyServices.com*

February 27, 2026

Peter C. Robison, Esquire
Caroline Sisson Montoya, Esquire
LEWIS THOMASON, P.C.
424 Church Street
Suite 2500
Nashville, Tennessee 37209

RE:  WARREN v FLYWAY EXPRESS, LLC AND DHL EXPRESS (USA) INC

Dear Mr. Robison & Ms. Montoya:

I have completed a summary of my opinions in the above case. My opinions are based on my knowledge and experience in the application of the Federal Motor Carrier Safety Regulations and applicable safety regulations at both the state and federal levels.  Also, my opinions are drawn from a review of the documents provided to me to date and my understanding of the motor carrier industry. I reserve the right to amend or expand my opinions in this matter based on further testimony that I am provided or credible documents that are entered into evidence. This may include the testimony or documents related to other experts utilized in this case.

I have outlined my opinions in this case and have attached the following documents in support of my opinions in this matter:
1. Cover sheet for Report of Preliminary Opinion
2. Discussion of Basis for Opinions
3. Listing of Materials Reviewed in Case
4. Curriculum Vitae for Jacob (Jake) Davis
5. Testimony Listing

Transportation Compliance Experts, Inc. is performing expert services in this matter under retainer agreement at an hourly rate of $300.

Thanks for letting me work with you on this case. If you have any questions related to the report, please do not hesitate to contact the office directly.

Sincerely,

*[signature]*

Jacob (Jake) Davis



**Jacob (Jake) Davis**
**DOT Compliance Expert**
Transportation Compliance Experts, Inc.
4851 Wharf Pkwy, Unit D-226
Orange Beach, AL 36561
251-923-4260 (Office)
334-657-1088(Cell)
Jake@TransportationSafetyServices.com

# Report of Opinion

# WARREN v FLYWAY EXPRESS, LLC AND DHL EXPRESS (USA) INC

**Opinion Report Prepared for:**

Peter C. Robison, Esquire
Caroline Sisson Montoya, Esquire
LEWIS THOMASON, P.C.
424 Church Street
Suite 2500
Nashville, TN 37209
615-259-1343 (Phone)
PRobison@lewisthomason.com
CMontoya@lewisthomason.com

**Date of Report:**

February 27, 2026

**Report Prepared by:**
Jacob (Jake) Davis
DOT Compliance Expert
Transportation Compliance Experts, Inc.
Jake@TransportationSafetyServices.com

*The individual that prepared this report reserves the right to amend, expand, or formulate further opinions as more information becomes available.*



**Jacob (Jake) Davis**
**DOT Compliance Expert**
Transportation Compliance Experts, Inc.
4851 Wharf Pkwy, Unit D-226
Orange Beach, AL 36561
251-923-4260 (Office)
334-657-1088(Cell)
Jake@TransportationSafetyServices.com



# DISCUSSION OF BASIS FOR OPINIONS

The opinions outlined in this report relate to an incident that took place on May 20, 2024, on Winchester Road in Shelby County, TN. My opinions regarding this matter relate to the applicability of the Federal Motor Carrier Safety Regulations (FMCSRs), the Tennessee Comprehensive Rules and Regulations (Tenn. Comp. R. & Regs.) 1340-01-13-.23 which adopts the FMCSRs as state law, and fleet industry standards of care as they pertain to Flyway Express, LLC (hereinafter referred to as Flyway) when the subject incident occurred.

## OPINION #1

**I have seen no evidence that Flyway was subject to commercial motor vehicle operational safety requirements contained in either the Federal Motor Carrier Safety Regulations (FMCSRs) or the Tennessee Comprehensive Rules and Regulations (Tenn. Comp. R. & Regs.). That includes the identification of any specific motor vehicle involved, such that its size and operation in commerce would subject it to commercial motor vehicle duties and standards of care regarding the incident on May 20, 2024.**

To date, I have been presented with no evidence to confirm the involvement of a Flyway vehicle in the subject incident, much less one that meets the definition of a commercial motor vehicle (CMV) under industry commercial motor vehicle regulations mentioned above. Flyway is registered under DOT#808040 and MC#364259 to operate commercial motor vehicles (CMVs) in interstate commerce, which would subject them to the Federal Motor Carrier Safety Regulations (FMCSRs); I have simply seen no evidence that such a vehicle was involved in the subject incident. When commercial motor vehicle safety duties are factually applicable to a fleet operation, they are widely understood to be nondelegable duties. That includes attempts to shift responsibility to another entity like DHL Express (USA), Inc.

For commercial motor vehicle (CMV) operations within Tennessee, Flyway is only subject to the Tennessee Comprehensive Rules and Regulations (Tenn. Comp. R. & Regs.) when they operate a vehicle with a gross weight, registered weight, or gross-weight rating of 10,001 pounds or greater.  The operation of smaller, non-CMV fleet motor vehicles in interstate/intrastate commerce within Tennessee on the date of this incident would not subject Flyway to the FMCSRs or the Tennessee Comprehensive Rules and Regulations (Tenn. Comp. R. & Regs.).

The FMCSRs 49 CFR §Parts 390 – 399, apply to motor carriers operating commercial motor vehicles in interstate commerce when they have a gross vehicle weight rating (GVWR) or a gross combined weight rating (GCWR) of 10,001 lbs. or more (49 CFR Part §390.5T) and to commercial motor vehicles operating in interstate/intrastate commerce (49 CFR Part §382 & 49 CFR Part §383) when they have a GVWR or a GCWR of 26,001 lbs. or more.  I have seen no evidence to suggest that the subject incident involved a commercial motor vehicle that would be subject to the FMCSRs.

Any claims made by Mr. Middlebrook suggesting noncompliance with commercial motor vehicle regulations in this case are improper. Furthermore, there is no industry standard of care that requires application of CMV safety regulations to a vehicle that does not meet the regulatory definition of a CMV.

**On Pages 9 - 19:** Mr. Middlebrook opines about the *Regulations and Standards Governing Motor Carriers and Drivers* as if Flyway was operating commercial motor vehicles that required a commercial driver's license as a motor carrier. I have seen no evidence to support that claim.

Mr. Middlebrook's suggestion that the Federal Motor Carrier Safety Regulations (FMCSRs), including as adopted by the State of Tennessee, were applicable to Flyway at times relevant and specifically applicable to this incident is improper. Such reflects Mr. Middlebrooks' lack of familiarity with the applicability of the Federal Motor Carrier Safety Regulations (FMCSRs).  The FMCSRs are only applicable to motor carriers operating commercial motor vehicles in intrastate/interstate commerce. It is common knowledge that cargo vans utilized within the package delivery industry, including the ones normally operated by Flyway, do not meet the definition of a commercial motor vehicle as defined in 49 CFT Part §390.5.

**On Pages 19 – 20:** Mr. Middlebrook opines about the American National Standards Institute (ANSI) ANSI/ASSP Z15.1, North American Transportation Management Institute (NATMI) Principles, and National Safety Council (NSC) Motor Fleet Safety Manual, as if they set the industry standard of reasonable care, which they do not.  These are third-party organizations that sell their training materials, and there is no regulatory requirement for Flyway to participate and purchase training materials from these organizations.  Mr. Middlebrook's commentary attempts to mislead the reader of his report into believing a higher level of prudence applies to Flyway commercial motor vehicle operations, which I consider unreasonable.

**On Page 37:** Mr. Middlebrook opines that FLYWAY/DHL should possess telematics capable of identifying a specific vehicle or driver involved in the subject incident. His commentary presumes that a yet-identified vehicle would be trackable to Flyway, is not supported by the evidence in this case. Furthermore, I am not aware of an obligation to have vehicle tracking on fleet motor vehicles beyond what vehicle manufacturers must do to comply with USDOT NHTSA standards for vehicles they sell. While fleets can and do equip their vehicles with telematics, I am not aware of any duty to have that technology to be consistent with the industry standard of reasonable care.

**On Page 38:** Mr. Middlebrook opines regarding the preventability of the subject incident to Flyway, DHL, and their driver(s). Doing so is unreasonable without being able to identify a specific vehicle or driver that can be attributed to either entity.

**On Page 40:** Mr. Middlebrook lists nine items that he reviewed to form his opinions that Flyway was operating a commercial motor vehicle in a way that would be relevant to the subject incident.  I have reviewed these nine items and see no evidence that a Flyway vehicle was involved in this incident, commercial motor vehicle or otherwise.

I have formed the opinions expressed in this report to a reasonable degree of professional certainty based on my knowledge, experience, and a thorough review of the available materials. These opinions are subject to revision or supplementation should additional information, evidence, or testimony become available. The methodology I employed in reaching these conclusions is consistent with those generally accepted by experts in my field and is recognized as reliable within the relevant professional community. To ensure the reliability and consistency of my analysis, these opinions have also undergone peer review within our organization for those with similar fleet industry experience.



**Jacob (Jake) Davis**
**DOT Compliance Expert**
Transportation Compliance Experts, Inc.
4851 Wharf Pkwy, Unit D-226
Orange Beach, AL 36561
251-923-4260 (Office)
334-657-1088(Cell)
Jake@TransportationSafetyServices.com

# MATERIALS REVIEWED IN WARREN V FLYWAY EXPRESS, LLC AND DHL EXPRESS (USA) INC

- **ATTACHMENTS TO REPORT OF W. CODY MIDDLEBROOK (HIS CV, POLICE REPORT, ETC.)**
- **REPORT OF W. CODY MIDDLEBROOK**
- **001-1 - COMPLAINT**
- **006 - ANSWER OF FLYWAY EXPRESS**
- **007 - ANSWER OF DHL EXPRESS (USA) INC**
- **ACCIDENT REPORT**
- **FLYWAY EXPRESS LLC CARTAGE AGREEMENT EFFECTIVE 04-25-2021 TO 08-10-2024 (3)**
- **VEHICLE PHOTOS**
- **WARREN - DEFENDANTS' RULE 26 INITIAL DISCLOSURES**
- **FEDERAL MOTOR CARRIER SAFETY REGULATIONS, MANAGEMENT EDITION, JJ KELLER**
- **SECTION 1340-06-01-.08 - TN ADOPTION OF FMCSRS**
- **TENNESSEE COMPREHENSIVE RULES & REGULATIONS - 1340-01-13-.23**
- **TENNESSEE INTRASTATE DOT RULES**
- **MEMPHIS FLYWAY EXPRESSS VEHICLES OPERATED FOR DHL**
- **SAFER WEB - COMPANY SNAPSHOT FLYWAY EXPRESS LLC**
- **FEDERAL MOTOR CARRIER SAFETY REGULATIONS AND INTERPRETATIONS THERETO.**



| Jacob Thomas Davis, |
|---|
| **DOT COMPLIANCE EXPERT** |
| Transportation Compliance Experts, Inc. |
| 4851 Wharf Parkway |
| Unit D-226 |
| Orange Beach, Alabama 36561 |
| 251-923-4260(Office) |
| 334-657-1088(Cell) |
| Jake@transportationsafetyservices.com |



*Professional Experience*

**Transportation Compliance Experts, Inc.**                                                              **Current**

**Federal Motor Carrier Safety Administration – Montgomery, AL**
**Division Administrator – Alabama Division**                                                        **2023-2025**

- Directed strategic oversight of federal motor carrier safety programs across Alabama.
- Oversaw management of the MCSAP (Motor Carrier Safety Assistance Program), CDL (Commercial Driver's License) programs.
- Implemented Alabama's commercial motor vehicle (CMV) crash reduction strategy, achieving four consecutive years of CMV declining fatal crashes (2020–2024).
- Provided technical guidance and oversight for federal program and state grant program management, including CVSP coordination, performance evaluation, and grant voucher reviews.
- Led multi-agency criminal investigations into CDL and medical fraud, resulting in multiple federal indictments.
- Represented FMCSA in statewide forums, partnerships, and industry safety initiatives.
- Recruited, interviewed, and hired prospective employees.
- Trained and onboarded new hires.
- Conducted performance appraisals for employees.
- Managed administrative functions: approving employee timecards and coordinating leave schedules to ensure adequate staffing and compliance with organizational policies.

**State Program Specialist – Alabama Division**                                                    **2016-2023**

- Managed the MCSAP, CDL, PRISM, New Entrant, and CVISN grant programs.
- Developed Alabama's commercial motor vehicle (CMV) crash reduction strategy, achieving four consecutive years of CMV declining fatal crashes (2020–2024).
- Contributed to a three-year consecutive CMV reduction in fatal crashes (2020–2022) through strategic planning and implementation.

- Coordinated law enforcement and transportation stakeholders to enhance compliance and safety.
- Conducted high-impact investigations in collaboration with federal and state agencies.
- Delivered technical training and presentations to stakeholder groups.

### Federal Program Specialist – Florida Division – Tallahassee, FL                              2013-2016

- Supervised over 15 federal investigators and 30 MCSAP officers.
- Managed FMCSA compliance investigations and enforcement program for the State of Florida.
- Led grant oversight, safety program evaluation, and operational planning.
- Spearheaded initiatives to improve division efficiency and became the top producer in the Southern Service Center.
- Advised on FMCSR, hazardous materials, household goods, and motorcoach enforcement protocols.

### Safety Investigator – Alabama Division                                                                         2005-2013
*Mar 2005 – Nov 2013*

- U.S. Federal Special Agent Investigator responsible for performing safety and compliance audits of commercial transportation facilities, freight brokers, commercial vehicle leasing companies, hazardous materials shippers, cargo tank manufacturers, and other stakeholders in the U.S. transportation chain, including audits of state CDL issuing agencies. Provided regulatory guidance to motor carriers and operators of CDL-required vehicles, non-CDL-required commercial motor vehicles, and vehicles not subject to federal or state transportation regulations. Trained in numerous types of transportation industry entities such as shippers, HM shippers, freight brokers, freight forwarders, and motor carriers. Additionally trained in their required federal regulatory requirements. Provided educational and technical assistance regarding compliance with the regulations and the selection of motor carriers by freight brokers.
- Performed hundreds of regulatory compliance review evaluations, Skill Performance Appraisals (SPEs), HM shipper reviews, cargo tank repair facility reviews, and driver/vehicle inspections.
- Performed reviews, investigations, crash analyses, and roadside inspections, which resulted in the assignment of safety ratings to motor carriers, and recommended and prepared enforcement cases, which led to penalties, operations out-of-service, and imminent hazard orders.
- Delivered hazardous materials and FMCSR training.
- Mentored new investigators and represented FMCSA at public and agency outreach events.

### Alabama Department of Revenue (Motor Vehicle Division) – Montgomery, AL         2004-2005
Revenue Compliance Officer I

- Enforced Alabama state and local revenue laws as a Revenue Compliance Officer I for the State of Alabama.
- Examined delinquent tax returns for accuracy.
- Contacted taxpayers to resolve unpaid tax liabilities.
- Investigated tax violations.
- Collected delinquent taxes.

**Education**

**Bachelor of Science in Business Administration** 1999-2004
Troy State University, Troy, AL

**Career Development Training Courses**

FMCSA Academy – Thirteen-Week Basic Training for Field Safety Investigators
FMCSA Basic Hazardous Materials Course
FMCSA North American Standard Driver/Vehicle Inspection Course
FMCSA North American Standard Cargo Tank Inspection Course
FMCSA Advanced Law Enforcement Interviewing Techniques
FMCSA Advanced Drug and Alcohol Investigative Techniques
FMCSA Dealing with Conflict
FMCSA Effective Communication
FMCSA Handicap Driver Waiver Course (Skills Performance Evaluation)
FMCSA Hazardous Materials Enforcement and Compliance Course
FMCSA MCSAP Grants Management Course
FMCSA Accident Countermeasures
FMCSA Time Management
FMCSA Federal Programs Management
FMCSA Specialized Hazardous Materials (Cargo Tanks) Course
FMCSA Basic Management for Non-Supervisors
FMCSA Cargo Tank Test & Inspection Facility Course
FMCSA Specialized Hazardous Materials (Explosives) Course
FMCSA New Entrant Audit Workshop
FMCSA North American Standard Inspection Course
FMCSA Hazardous Materials Security
FMCSA New Hours of Service Training
FMCSA Federal Information Systems Security Awareness
FMCSA Food Transportation Safety Act: Highway Transportation
FMCSA Human Trafficking General Awareness

**Key Skills**

- Federal & State Program Oversight
- Transportation Safety Strategy
- Regulatory Compliance (FMCSR, HM, CDL)
- Interagency Coordination & Leadership
- Grant Management & Budgeting
- Investigation & Enforcement Operations
- Strategic Planning & Crash Reduction
- Public Speaking & Stakeholder Engagement
- Data Analysis & Program Evaluation
- Personnel Management & Mentorship
- Industry Stakeholder Collaborations

- Safety Management System Assessment
- Crash Trend Analysis & Mitigation Planning

| RULE 26 TESTIMONY LISTING | | | | | | | |
|---|---|---|---|---|---|---|---|
| JAKE DAVIS - TRANSPORTATION COMPLIANCE EXPERTS | | | | | | | |
| DOT EXPERT | | | | | | | |
| YEAR | CASE NAME | DF/PL | COURT | | | COUNSELOR | LAW FIRM | DEPOSITION / TRIAL |
| | | | DISTRICT/DIVISION | COUNTY | STATE | | | |
| | THE EXPERT HAS NOT YET OFFERED DEPOSITION OR TESTIMONY. | | | | | | | |