**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**

| | |
|---|---|
| MARY L. WARREN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 2:25-cv-02588-SHL-tmp |
| v. | ) |
| | ) Judge Sheryl H. Lipman |
| | ) |
| | ) Magistrate Judge Tu M. Pham |
| | ) |
| | ) Jury Demand |
| FLYWAY EXPRESS, LLC, | ) |
| DHL EXPRESS (USA), INC., CLARKE | ) |
| WHITE, JR., and | ) |
| JOHN DOES 2-3, | ) |
| | ) |
| Defendants. | ) |

**RESPONSE OF DEFENDANTS FLYWAY EXPRESS, LLC AND DHL EXPRESS (USA), INC. IN OPPOSITION TO PLAINTIFF'S MOTION TO REMOVE/BREAK THE NON-ECONOMIC DAMAGES CAP**

Defendants Flyway Express, LLC and DHL Express (USA), Inc. (collectively "Defendants"), by and through counsel, file this Response in opposition to the Motion to Remove/Break the Non-Economic Damages Cap (Docket Entry No. 65).

Plaintiff's Corrected Memorandum of Law in Support of Plaintiff's Motion to Remove/Break the Non-Economic Damages Cap can be summed up as an exercise in asking the Court to decide disputed facts, jump to conclusions in inferring essentially criminal intent on the part of one of the defendants in this litigation, and to do so in aid of providing what would be merely an advisory opinion on exceptions to the non-economic damages caps under Tennessee law that might or might not ever come to pass as to one, some, or none of the defendants in this litigation.

## ARGUMENT AND ANALYSIS

**1. Plaintiff's Motion is not ripe for adjudication.**

Tennessee law is well-settled as to the "justiciability" of matters and the requirement that a dispute be "ripe" before a Court will weigh in and provide a ruling. "'[T]he province of a court is to decide, not advise, and to settle rights, not to give abstract opinions.'" *West v. Schofield*, 468 S.W.3d 482, 490 (Tenn. 2015) (quoting *Norma Faye Pyles Lynch Family Purpose LLC v. Putnam Cnty.*, 301 S.W.3d 196, 202 (Tenn. 2009)). This means that it is only "when the disputed issue is real and existing, and not theoretical or abstract, and when the dispute is between parties with real and adverse interests," that a legal controversy exists for the Court to adjudicate. *Id.*

The particular justiciability doctrine that dooms the Plaintiffs' motion in this case is ripeness. "[R]ipeness is peculiarly a question of timing." *Reg'l Rail Reorganization Act Cases*, 419 U.S. 102, 140 (1974) (quoted in *Schofield*, 468 S.W.3d at 490). "'The central concern of the ripeness doctrine is whether the case involves uncertain or contingent future events that may or may not occur as anticipated, or indeed, may not occur at all.'" *Schofield*, 468 S.W.3d at 491 (quoting *B&B Enters. v. City of Lebanon*, 318 S.W.3d 839, 848 (Tenn. 2010)). Here, the statutory framework that puts caps on non-economic damages in place, and that provides for their removal as to certain defendants, makes clear that nothing about those questions should impact the way the trial of a case is to happen and that, inherently, whether or not any issues about application or removal of caps on non-economic damages is always an "uncertain or contingent future event" until after a jury has rendered its verdict in a case.

The Tennessee Supreme Court has unequivocally made this clear with respect to constitutional challenges regarding application of the caps on non-economic damages. *See Clark v. Cain*, 479 S.W.3d 830, 832 (Tenn. 2015). In *Clark*, the Court explained that "[t]he statutory

2

cap on non-economic damages will have no relevance in this case unless and until Plaintiffs obtain a verdict in excess of that cap." *Id.* The Court also pointed out how the mechanics of the operation of the statute necessitate such a conclusion: "the limitation on the amount of non-economic damages is not disclosed to the jury; the cap is only applied by the trial court after a plaintiff's verdict and an award of damages subject to and in excess of the cap." *Id.* (citing Tenn. Code Ann. § 29-39-102(g); *Monypeny v. Kheiv*, 2015 Tenn. App. LEXIS 187, at \*78 (Tenn. Ct. App., Apr. 1, 2015)). For those reasons, the Court vacated the trial court's ruling on the question of constitutionality of the caps based upon the ripeness doctrine because "[w]hether the cap is implicated in this case thus remains an open question, and the issue of constitutionality of that cap is not ripe for determination at this time." *Id.*

Defendants would note that Plaintiffs have asserted in their motion that "federal courts applying Tennessee law regularly determine the applicability of the damages cap prior to trial to ensure that juries are properly instructed regarding damages. Motion p. 3, Docket Entry No. 67. However, in support of that assertion, Plaintiff only cites *McClay v. Airport Management Services, LLC*, a Tennessee Supreme Court case that was certified after a jury trial. *See McClay v. Airport Mgmt. Servs., LLC*, 596 S.W.3d 686 (Tenn. 2020). Defendants will discuss the significance of *McClay* further below, but note that it does not support Plaintiff's apparent argument that this issue is ripe for adjudication at this stage.

**2. Plaintiff has not identified any admissible facts in evidence that could support a determination on the application of Tenn. Code Ann. § 29-39-102.**

The analysis undergirding the conclusion in *Clark* applies equally, if not even more forcefully, to efforts to adjudicate the kinds of factual questions that could result in a determination that the caps are not applicable that make up the premise of Plaintiff's motion. Plaintiff asserts in her Corrected Memorandum that the "undisputed facts" show that multiple employees of

Defendants were racing each other, constituting recklessness. However, to support her assertion, Plaintiff cites only to the Tennessee Electronic Traffic Crash Report (Docket Entry No. 67-1), which is explicitly not admissible evidence under Tenn. Code Ann. § 55-10-114(b). In fact, contrary to Plaintiff's unsupported assertion, the undisputed evidence in this case—including Plaintiff's own deposition testimony—does not support any allegations or "racing" or that there was any driver involved other than Clarke White, Jr. Defendants have denied that there was any driver employed by Flyway other than Clarke White Jr. involved in the subject collisions. *See* Answer of Flyway to Amended Complaint ¶ 34, Docket Entry No. 61. And as Defendants submitted previously in this matter, regarding alleged other vehicles or "racing," Plaintiff testified in her deposition as follows:

> Q    And you saw just the one DHL van?
> A    Yeah. I wasn't aware that it was two. I was told later on down the line that it was two.
> Q    You never saw the other one?
> A    No.
> Q    Do you know if there was another one?
> A    Didn't I -- I could have sworn I just said I was -- I was told that it was two –
> Q    Okay.
> A    -- later on down the line. I was only aware of one.
> Q    I don't want you to tell me anything your lawyer said.
> A    Well, that's really what it's pertaining to.
> Q    Okay.
> A    So that's why I'm saying it -- that's why I'm wording it like that.
> Q    Is there anybody, not including your lawyer –
> A    No.
> Q    -- or people working for them, that told you that?
> A    No.

*See* Excerpts from the Deposition of Plaintiff Mary Warren, pp. 222:23-223:21, Docket Entry No. 57-1.)

**3. Plaintiff has not identified any proof that supports application of any deviation from the statutory caps against these Defendants.**

Furthermore, Plaintiff's unsupported allegations of reckless conduct appear to apply to a single defendant—Clarke White Jr.—and Plaintiff has not identified any proof in evidence that would support removal of the caps as to these Defendants.

As is discussed below, the statutory scheme regarding the application of the cap on non-economic damages addresses how the cap works when it applies to multiple defendants but does not explicitly address how apportionment should work if multiple defendants are found liable under the principle of comparative fault in a case and some, but not all, of those defendants also have engaged in conduct that renders the cap on non-economic damages inapplicable as against them. Defendants submit, as further set forth below, that the public policy justifications behind the enactment of the statutory caps on non-economic damages also necessitate that any removal of the application of the caps premised upon misconduct of a defendant must not subject other defendants, not implicated in the misconduct, to unfettered liability. Whether or not the noneconomic damages caps should apply as to claims against other defendants should turn on whether any of those other defendants can be proven to also have engaged in conduct sufficient to trigger the exceptions to the cap enumerated in Tenn. Code Ann. § 29-39-102(h). Plaintiff has not attempted to make any such showing in her motion or memorandum in support.

Whether or not the noneconomic damages caps should apply as to claims against other defendants should turn on whether any of those other defendants can be proven to also have engaged in conduct sufficient to trigger the exceptions to the cap enumerated in Tenn. Code Ann. § 29-39-102(h). That conclusion is the only reasonable reading of the relevant provisions of the Act, in light of what relevant legislative history reveals regarding the legislative intent behind the exceptions. Further, such an approach would be in keeping with how one other jurisdiction with

a roughly similar arrangement to removing the caps for noneconomic damages – Idaho -- has applied its provisions.

Tenn. Code Ann. § 29-39-102(a)(2) provides that "[c]ompensation for any noneconomic damages suffered by each plaintiff" shall be capped at an amount "not to exceed seven hundred fifty thousand dollars ($750,000) for all injuries and occurrences that were or could have been asserted, regardless of whether the action is based on a single act or omission or a series of acts or omissions that allegedly caused the injuries or death." Thus, the statutory cap on noneconomic damages applies on a per-plaintiff basis. Tenn. Code Ann. § 29-39-102(b) addresses what must be done, in light of Tennessee's approach to comparative fault, when there are multiple defendants involved:

> [i]f multiple defendants are found liable under the principle of comparative fault, the amount of all noneconomic damages, not to exceed seven hundred fifty thousand dollars ($750,000) for each injured plaintiff, shall be apportioned among the defendants based upon the percentage of fault for each defendant, so long as the plaintiff's comparative fault (or in a wrongful death action, the fault of the decedent) is not equal to or greater than fifty percent (50%), in which case recovery for any damages is barred.

The statute goes on, however, to include provisions that establish exceptions to application of the caps on noneconomic damages when certain types of conduct are proven to have taken place. The three categories of conduct that can trigger removal of the noneconomic damages caps are:

> (1) If the defendant had a specific intent to inflict serious physical injury, and the defendant's intentional conduct did, in fact, injure the plaintiff;
>
> (2) If the defendant intentionally falsified, destroyed or concealed records containing material evidence with the purpose of wrongfully evading liability in the case at issue, provided, however, that this subsection does not apply to the good faith withholding of records pursuant to privileges and other laws applicable to discovery, nor does it apply to the management of records in the normal course of business or in compliance with the defendant's document retention policy or state or federal regulations; or

(3) If the defendant was under the influence of alcohol, drugs or any other intoxicant or stimulant, resulting in his or her judgment being substantially impaired, and causing the injuries or death. For purposes of this subsection, a defendant shall not be deemed to be under the influence of drugs or any other intoxicant or stimulant, if the defendant was using lawfully prescribed drugs administered in accordance with a prescription or over-the-counter drugs in accordance with the written instructions of the manufacturer.

Tenn. Code Ann. § 29-39-102(h). In the event that one of these three things are proven, then the statute explains that "[t]he limitation on the amount of noneconomic damages imposed by subsections (a)(2) through (e) shall not apply to personal injury and wrongful death actions." Tenn. Code Ann. § 29-39-102(h).

Unfortunately, the language used in subsection (h) is somewhat inartful. Structurally, the "shall not apply" piece comes first in the statutory subsection and the enumerated exceptions follow. For that reason, it *could* be read to mean that if a plaintiff could prove that one defendant in a multi-defendant case acted with intent to cause substantial injury or intentionally destroyed records or was substantially impaired by illegal drugs when causing the injury that the non-economic damages caps should also be removed as to the other defendants because the statute says such caps "shall not apply."

There are at least two problems with such a reading of the provisions inherent in the statutory structure and language itself. First, the same statutory language is also used to describe the "bad actor" exceptions that render caps on punitive damages in personal injury and wrongful death cases inapplicable under Tenn. Code Ann. § 29-39-104(a)(7). Well-settled principles of statutory construction would dictate that the identical language in Tenn. Code Ann. § 29-39-102(h) and Tenn. Code Ann. § 29-39-104(a)(7) would have to be interpreted to provide similar results in terms of the removal of caps. A conclusion that conduct by one defendant involving intent to inflict serious injury on someone should subject all defendants in a case to the risk of unlimited

7

punitive damages seems inherently unreasonable.  The second structural problem is one involving grammar.  As to each of the three triggers for removal of the caps, the statute uses "the defendant" rather than "a defendant."  Thus, it reads like a statute that is rendered ambiguous, if at all, only because it fails to anticipate multi-defendant litigation.  Reading the statute to mean that the caps on noneconomic damages are eviscerated as to all defendants in multi-defendant litigation – even if it also meant the same result as to punitive damages -- would be a more reasonable reading of the statutory provisions if the exceptions used the article "a" to modify defendant.

In the event a court were convinced these provisions were ambiguous, any question regarding how to read these provisions for removal of the caps on noneconomic damages should be readily resolved by examination of aspects of the pertinent legislative history.  These statutory provisions were part of the Tennessee Civil Justice Act of 2011.  That legislation began as House Bill 2008 (HB 2008), and the portion that is now Tenn. Code Ann. § 29-39-102(h) was explained on April 6, 2011 by Rep. Dennis during a meeting of the House Judiciary Subcommittee.  Rep. Dennis explained that the application of the exceptions to the caps on non-economic damages should be based on the individual tortfeasor.  Specifically, Rep. Dennis said:

> In addition it spells out a short list of things involving intentional conduct with the intent to wrong an individual that will cause the caps to not apply.  Such that *if an individual tortfeasor* does an intentional act with the intent to harm someone with serious physical injury then *they* would not receive the benefit of those caps in a civil action either in noneconomic damages or in punitive damages.[1] (emphasis added)

---

[1]  This discussion is shown by video available for streaming through the Tennessee legislature's website (http://tnga.granicus.com/MediaPlayer.php?view_id=196&clip_id=3986), with this portion commencing at time stamp 15:50 and running to around the 16:25 mark.

8

Less than a week later, during a meeting of the full House Judiciary Committee on April 12, 2011, in response to questions from Rep. Stewart, Rep. Dennis again explained this individualized focus of the legislation

> This was an attempt, a very good attempt, to narrow in on the specific conduct of the defendant that justifies removing those caps - the intent to actually cause someone substantial harm… *if you act with the intent to hurt someone then you shouldn't receive the benefit of the caps*….[2] (emphasis added).

Then again, and specifically in the context of a question from Rep. Stewart about a hypothetical situation in which a truck driver was operating a truck under the influence and caused injury to another and whether that truck driver would benefit from the cap, Rep. Dennis explained:

> That was the reason for including this language . . . is to make sure you are dealing with someone not just that has taken a substance but someone who is substantially impaired by that substance such that the caps *should not apply to that individual*.[3] (emphasis added)

By properly interpreting these provisions in this fashion, Tennessee courts will also be acting in a fashion that is consistent with how a similar issue has been approached by another jurisdiction with a variation on this "bad actor" exception to caps on noneconomic damages. Although a number of jurisdictions have enacted caps of one form or another on noneconomic damages, and some of those jurisdictions have also enacted exceptions of various types to the application of those caps, there does not appear to be another jurisdiction that has done so and employed the identical language adopted in Tennessee.  There is a jurisdiction, however, with roughly similar language – Idaho.  There is at least one reported case in Idaho from which the

---

[2]  This discussion is shown by video available for streaming through the Tennessee legislature's website (http://tnga.granicus.com/MediaPlayer.php?view_id=196&clip_id=4011), commencing around 1:21:10 and running for approximately 20 seconds or so from that time stamp.

[3]  This discussion is shown by video available for streaming through the Tennessee legislature's website (http://tnga.granicus.com/MediaPlayer.php?view_id=196&clip_id=4011).  The discussion raising the question tied to the truck driver hypothetical begins around the 1:26:00 mark, and the quoted language from Rep. Dennis can be heard coming just ten or second before the 1:29:00 mark.

conclusion can be drawn that it treats its exception to its non-economic damages cap as applying on an individual tortfeasor, defendant-by-defendant basis. *See Kirkland v. Blaine County Med. Ctr.*, 4 P.3d 115 (Idaho 2000).

*Kirkland* involved a certified question of law received from the Idaho federal district court related to an attempt to pursue a constitutional challenge to Idaho Code § 6-1603, which is Idaho's statutory provision imposing caps on noneconomic damages. Idaho Code §6-1603(1) provides for a $400,000 cap on noneconomic damages with an escalator tied to the average annual wage in Idaho. *Kirkland*, 4 P.3d at 1117. As is the case in Tennessee,[4] the jury in Idaho is not made aware of this cap and the cap applies on a per-claimant basis without regard to the number of defendants who might be responsible for the associated injury to a claimant. Idaho Code § 6-1603(2) and (3).

Idaho Code § 6-1603(4) provides a "bad actor" exception to the noneconomic damages cap and reads as follows:

> The limitation of awards of noneconomic damages shall not apply to: (a) Causes of action arising out of willful or reckless misconduct. (b) Causes of action arising out of an act or acts which the trier of fact finds beyond a reasonable doubt would constitute a felony under state or federal law.

This language in Idaho could be argued to potentially suffer from the same type of ambiguity as Tenn. Code Ann. § 29-39-102(h) because it speaks in terms of the limitation on the amount of noneconomic damages not applying to "causes of action" rather than not being available to reduce the liability of a defendant or defendants.

Although the *Kirkland* case was not directly about the interpretation of this language, its discussion of the underlying case for which it received the certified question makes clear that the exceptions to Idaho's non-economic damages cap do not result in removal of the caps other than

---

[4] Tenn. Code Ann. § 29-39-102(g) provides that the jury will not be made aware of any cap and that it is the Court's responsibility to reduce the amount awarded to comply with the cap.

10

as the particular individual tortfeasor who has been shown to have engaged in the kind of conduct trigger removal of the cap. The underlying case in *Kirkland* was a medical malpractice lawsuit brought by parents for themselves and on behalf of their injured son against a physician, Dr. Donald, and against the hospital/medical center where the physician provided the alleged negligent treatment, WRMC. *Kirkland*, 4 P.3d at 1116-17. The jury returned a total verdict in the case in the amount of $29,715,077, which included an award of $15,000,000 in non-economic damages to the injured child and also a separate award to his parents of $3,500,000 in non-economic damages. The jury apportioned 25% of the fault in the case to WRMC and 75% of the fault in the case to Dr. Donald. *Id.* at 1117.

The key language in the *Kirkland* opinion for purposes of understanding the operation of the Idaho exceptions to the cap is as follows:

> If applied to this case, I.C. § 6-1603 would limit [the son's] recovery of noneconomic damages against WRMC to approximately $573,000 instead of the $3,750,000[5] award by the jury. Because the jury specifically found Dr. Donald to have acted recklessly, the cap on noneconomic damages found in I.C. § 6-1603 would not apply to limit his liability to the Kirklands.

*Id.* Thus, it has to be the case that Idaho's "bad actor" exceptions to the non-economic damages cap limit the removal of the cap to the particular offending defendant and leave the caps in place as to other defendants.

Although these Defendants submit that the above analysis is the ultimate, correct analysis to be applied by Tennessee courts *when the time comes to have to do so*, the overarching, indisputable point made plain by the Tennessee Supreme Court and its application of the ripeness component of the doctrine of justiciability is that doing so now would be premature. The time has

---

[5] This number comes from the 25% allocation of fault to WRMC applied to the $15,000,000 noneconomic damages award – ¼ of $15 million being $3.75 million.

11

not come in this litigation and certainly will not come unless and until there has been, at least, a jury verdict returned that awards non-economic damages in an amount that would exceed the statutory cap.

### 4. Plaintiff's purported medical expenses are unsupported by any evidence in the record and do not invoke the class of damages that support removal of the statutory cap.

Plaintiff's motion asserts without evidence that Plaintiff has incurred $89,838.06 in medical expenses and that her injuries constitute long-term impairment, loss of enjoyment of life, and physical/emotional suffering. However, Plaintiff's asserted medical damages, while not insignificant, are of the general sort commonly envisioned in personal injury cases, and do not present a catastrophic or exceptional scenario that could allow removal of the statutory cap on damages.

### 5. Plaintiff's arguments regarding the unconstitutionality of Tenn. Code Ann. Tenn. Code Ann. § 29-39-102 have been rejected by the Tennessee Supreme Court.

Plaintiff's motion asserts that the application of the statutory caps on non-economic damages under Tenn. Code Ann. § 29-39-102 would violate her constitutional rights to trial by jury and due process. Plaintiff cites the Tennessee Supreme Court case of *McClay v. Airport Management Services, LLC* as authority that the statutory caps infringe on her constitutional rights. However, *McClay* stands for the opposite proposition, that the statutory caps are constitutional and do not violate a claimant's right to trial by jury:

> We conclude that the right to trial by jury under the Tennessee Constitution is satisfied when an unbiased and impartial jury makes a factual determination regarding the amount of noneconomic damages, if any, sustained by the Plaintiff. That right is not violated when a judge then applies, as a matter of law, the statutory cap on noneconomic damages. Thus we hold that the statutory cap on noneconomic damages in Tenn. Code Ann. § 29-39-102 does not violate the right to trial by jury under the Tennessee Constitution.

*McClay*, 596 S.W.3d at 693. While *McClay* did not specifically address the argument of due process, it did reject constitutional arguments such a separation of powers and the equal protection provisions of the Tennessee Constitution. *Id.* at 696. Plaintiff did not cite any authority for her due process argument, and Defendants are not aware of any authority supporting that argument.[6]

### CONCLUSION

For the reasons stated above, Plaintiff's Motion to Remove/Break the Statutory Caps contained in Tenn. Code Ann. § 29-39-102 should be denied.

Respectfully submitted:

**LEWIS THOMASON, P.C.**

*/s/ Peter C. Robison*
Peter C. Robison, BPR #27498
424 Church Street, Suite 2500
Nashville, TN 37219
Phone: 615-259-1366
probison@lewisthomason.com


Caroline Montoya, BPR #41330
40 S. Main Street, Suite 2900
Memphis, Tennessee 38103
Phone: 901-525-8721
cmontoya@lewisthomason.com

*Counsel for Defendants DHL Express (USA), Inc. and Flyway Express, LLC*

---

[6] Due process arguments were attempted to be raised in the Tennessee Supreme Court case *Yebuah v. Center for Urological Treatment, PLC*, 624 S.W.3d 481 (Tenn. 2021) but were deemed to have been waived on appeal.

13

## CERTIFICATE OF SERVICE

The undersigned hereby certified that on April 17, 2026, the foregoing document was served on the following counsel of record through the Court's electronic filing system:

Henry Reaves, III, Esq.
Carlos Moore, Esq.
REAVES LAW FIRM
2650 Thousand Oaks Blvd., Suite 3100
Memphis, Tennessee 38118
Henry.reaves@beyourvoice.com
Carlos.Moore@beyourvoice.com

*Counsel for Plaintiff Mary Warren*

*/s/ Peter C. Robison*
Peter C. Robison