**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| **MARY L. WARREN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 2:25-cv-02588-SHL-tmp** |
| **v.** | ) | |
| | ) | **Judge Sheryl H. Lipman** |
| | ) | |
| | ) | **Magistrate Judge Tu M. Pham** |
| | ) | |
| | ) | **Jury Demand** |
| **FLYWAY EXPRESS, LLC,** | ) | |
| **DHL EXPRESS (USA), INC., CLARKE** | ) | |
| **WHITE, JR., and** | ) | |
| **JOHN DOES 2-3,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

**DECLARATION OF JUAN CUCALON**

---

**COMES** the Declarant, Juan Cucalon, having been duly sworn according to law, and deposes and says of his own personal knowledge as follows:

1.      My name is Juan Cucalon and I hold the position of Senior Director of Operations for DHL Express (USA), Inc. ("DHL").

2.      Effective April 25, 2021, DHL entered into a 2021 Cartage Agreement (the "Agreement") with Flyway Express LLC ("Flyway") for Flyway to provide local ground transportation, pick-up, and delivery services as an independent service provider. A copy of the Agreement is attached hereto as Exhibit A. *See* Exhibit A, Section 9.1.

3.      At all times, DHL performed its obligations required pursuant to the Agreement.

4.      At all times, Flyway acted as an independent contractor to DHL, not an agent, pursuant to the express provisions of the Agreement. *See* Exhibit A, Section 3.2.

1

5. At all times, DHL had no discretion, responsibility, or control over the manner and means by which Flyway or its employees performed the cartage and related services in accordance with the Agreement. *See* Exhibit A, Section 3.3.

6. Specifically, Flyway had sole discretion, responsibility, and control over the: wages, hours, and working conditions of Flyway employees; assignment of duties, tasks, and projects to Flyway employees; selection and supervision of Flyway employees; and resources used by Flyway to provide the cartage and related services. *See* Exhibit A, Sections 3.3.1 through 3.3.4.

7. At all times, DHL had no obligation to pay Flyway employees any form of compensation. *See* Exhibit A, Section 3.3.1.

8. At all times, Flyway had the sole right to determine all aspects of its performance under the Agreement, including the number of employees and the tools and instrumentalities used by Flyway employees. *See* Exhibit A, Section 3.3.4.

9. At all times, DHL did not have any employer-employee relations with Flyway's employees, pursuant to the express provisions of the Agreement. *See* Exhibit A, Section 3.4.2.

10. At all times, Flyway employees were solely employed by Flyway and were not, nor ever have been, employees of DHL. *See* Exhibit A, Section 3.4.2.

11. To the best of my knowledge and at all times, Flyway obtained written acknowledgement from each Flyway employee detailing his or her understanding that he or she is not an employee nor joint employee of DHL and that DHL does not owe him or her any obligations as an employer. *See* Exhibit A, Section 3.4.2.

12. At all times, DHL did not prevent Flyway from performing cartage or related services for any other person or business except as provided in the Agreement. *See* Exhibit A, Section 3.12.

13.    At all times, DHL did not have any ownership, obligations, or control regarding any Flyway's delivery vehicles, except that DHL paid the cost of trademarked DHL decals for each Flyway delivery vehicle. *See* Exhibit A, Section 3.5.

14. Further declarant saith not.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America and the State of Tennessee that the foregoing declaration is true and correct.

Executed on: _____4/29/26_____

_____
JUAN CUCALON

3