UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

_____

MARY L. WARREN,

      Plaintiff,

                  Case No. 2:25-cv-02588-SHL-tmp

                  Judge Sheryl H. Lipman

VS.

                  Magistrate Judge Tu M. Pham

                  Jury Demand

FLYWAY EXPRESS, LLC,
DHL EXPRESS (USA), INC.
AND JOHN DOES 1-3,

      Defendants.
_____

THE VIDEOTAPED DEPOSITION VIA ZOOM OF

W. CODY MIDDLEBROOK
_____

MARCH 25, 2026

CERTIFIED
TRANSCRIPT

_____

CHERI SULLIVAN, RPR, CCR, LCR
Riverside Reporting
(901) 527-1100

**EXHIBIT 1**

WARREN vs FLYWAY/DHL
W. CODY MIDDLEBROOK   03/25/2026                                                    13

wanted to state what they were for the record.

BY MR. ROBISON:

Q.    Mr. Middlebrook, tell me about your educational background.  Do you hold any degrees?

A.    I do.  My bachelor's degree in sociology.

Q.    And do you have any graduate-level degrees?

A.    I do not.

Q.    Is the bachelor's, was it a Bachelor of Arts or Bachelor of Science?

A.    Bachelor of Science.

Q.    And where did you get that B. S. in sociology?

A.    Jacksonville State University.

Q.    What year?

A.    2014.

Q.    After you graduated from Jacksonville State, what was your next step in either training or certifications or work history?

A.    During my time at Jacksonville State University, I worked for Sears Automotive Centers in the maintenance department.  I maintained or oversaw vehicle maintenance and repair.

Immediately upon graduation I worked for Verizon corporate in their B2B sales.  I got hired right out of college.  This was around the time of the

CHERI SULLIVAN, RPR, CCR, LCR

WARREN vs FLYWAY/DHL
W. CODY MIDDLEBROOK  03/25/2026                                        29

factors impacting the safe operations of commercial

motor vehicles.

        Did I read that right?

A.      You did.

Q.      Who determines what issues are relevant to

this particular case?

A.      This is a reflection of my methodology.  I try

to look at all aspects of transportation safety.  A

lot of what I do is carrier work, but it's also mixed

fleets.  So I typically look at all the totality of

the evidence available to me.

Q.      That sentence mentioned driver qualifications.

Have you reviewed qualifications for any specific

driver as part of your formation of opinions in your

report dated January 2026?

A.      By the time the report was generated, no.

Q.      And have you subsequently reviewed driver

qualifications of any specific driver?

A.      I received documents today that I would

probably consider relevant to driver qualification

that would need further review.

Q.      So you have possession of them, but you

haven't completed a review of them; is that fair?

A.      Yes.  Rather than skimming through.

Q.    Did you review any driver's hours of service when you formed your opinions in the report dated January 30th of 2026?

A.    I did not.

Q.    In January of 2026, had you identified any particular vehicle owned or operated by any defendant in this case that was involved in this motor vehicle collision?

A.    Can you restate the question, please?

Q.    Sure.  Happy to.  When you formed your opinions in this case, as they are contained in your report from January, had you identified any particular vehicle that was owned or operated by either of the defendants in this case that was involved in the motor vehicle collision?

A.    No specific vehicles apart from the statements from the parties involved in the accident identifying two DHL vans.  But not a particular van or VIN number or vehicle number, no.

Q.    And then let me ask the follow-up question. In the records that you received today, I understand that you have not reviewed them, but do you have any understanding about any particular vehicle owned or operated by any of the defendants that was involved in

WARREN vs FLYWAY/DHL
W. CODY MIDDLEBROOK  03/25/2026                                                    39

Federal Motor Carrier Safety Administration,

Subchapter B, Parts 300 through (inaudible).

THE COURT REPORTER:  I'm sorry.  What

parts?

A.     Parts 300 through 399 of the Code of Federal

Regulations.

Q.     I will try to slow down too.  I know we're

going to get into some technical jargon here.  This is

difficult for the court reporter, and we apologize.

It is okay if I refer to those as the FMCSRs,

as a common acronym?

A.     Yes.

Q.     I don't know if that's any easier or harder

for the court reporter, but it's going to be easier

for the transcript if we don't have that repeated over

and over and over again.

What information do you have that the

vehicle or any vehicle owned or operated by Flyway

Express was subject to the FMCSRs?

A.     Restate the question one more time.  I

apologize.

Q.     Sure.  What information do you have that any

vehicle owned or operated by Flyway Express involved

in this collision with Mary Warren was subject to the

CHERI SULLIVAN, RPR, CCR, LCR

WARREN vs FLYWAY/DHL
W. CODY MIDDLEBROOK   03/25/2026                                              40

FMCSRs?

A.    At the time of issuing the report, not knowing exactly what vehicle was involved but knowing that DHL and Flyway are both registered interstate motor carriers that regularly have vehicles that engage in interstate commerce doesn't negate the fact that they'd be under the regulatory scheme, but I don't have any direct evidence that this vehicle was subject to the FMCSRs.

Q.    I take it, then, at the time of the issuance of your reports and opinion in January of this year, you didn't know one way or the other because you didn't know what the vehicle was yet?

A.    Correct.

Q.    Is a vehicle like a delivery van that are so common nowadays from so many different vendors, is a vehicle like that typically subject to the FMCSRs?

A.    It's hard to define what "typically" means.  A lot of people are surprised to find that vehicles that are over 10,000 pounds engage in interstate commerce are subject to the regulations.  And depending on how these vehicles are loaded and the type of cargo they transport, even vehicles that the public might not assume are regulated vehicles are regulated vehicles,

WARREN vs FLYWAY/DHL
W. CODY MIDDLEBROOK  03/25/2026                                                                44

to accept it at face value unless there's other

contradicting evidence.  And I did, for the purposes

of this preliminary report, assume the veracity of --

assumed the information provided in the narrative as

being true.

Q.    If a witness or a party in this case were to

later provide testimony either in deposition or at

trial that did not support those assumptions, would

you need to update or amend your opinions?

A.    Of course.  I mentioned multiple times

throughout the report that all of my opinions are

always subject to additional information and evidence

that would need to be reviewed.

Q.    I want to direct your attention to Opinion 3

on that same page.  Tell me if I read this right:

Flyway/DHL failed to implement and maintain adequate

safety management controls necessary to ensure driver

compliance with applicable safety standards and

corporate safety policies.

       Did I read that right?

A.    Yes.

Q.    As I understand it, you had not reviewed

corporate safety policies from Flyway or from DHL; is

that correct?

A.      The policies, no.  However, they indicated

specific types of safety controls that they used and

the type of behaviors and safety behaviors that they

used with their drivers in the responses to

interrogatories.

Q.      What is the basis for your opinion that either

of the defendants failed to implement or maintain

adequate safety management controls?

A.      Part of the behavior -- safety behavior and

posture formulated by the defendants stated that they

have routinely assessed the safety of their drivers

daily based off data, telematic data, which they were

unable to locate or provide at the time asked, and for

me that is indicative of a lack of safety management

controls.

Q.      Is it your understanding that either Flyway or

DHL used telematic data daily to review driver

performance or driver safety?

A.      Can you restate the question, please?

Q.      Sure.  Is it your understanding that either of

the defendants, Flyway or DHL, used telematic data to

review driver safety in 2024?

A.      It's my understanding they used data.  I don't

want to get, I guess, confused on telematic data, but

provided that data.

Q.    When you say "these two vehicles," what vehicles are you referring to?

A.    The two vehicles discussed by one of the parties involved in the accident.

Q.    Are you aware of any evidence that has identified a second vehicle owned or operated by either of the defendants in this case, Flyway or DHL?

A.    The evidence, yes.  One of the parties involved mentioned that there were two DHL vans racing.

Q.    When you say "one of the parties involved," who are we talking about?

A.    Ms. Wade.

Q.    Now, are you aware of any testimony or statements by Mary Warren that mentioned a second DHL-branded vehicle?

A.    I realize that she was recently deposed.  I don't have that testimony yet.  Based off the evidence in the police narrative, she mentioned a truck.  Ms. Wade mentioned trucks, plural.

Q.    Under the allegations and statements made in the police report which you've assumed to be true, are you aware of any basis for previous racing or similar

REPORTER'S CERTIFICATE

STATE OF TENNESSEE )

COUNTY OF SHELBY   )

I, CHERI SULLIVAN, RPR, CCR, LCR, a Notary Public in and for the said state and county, hereby certify that the witness was first duly sworn by me; and I reported the foregoing deposition at the time and place set forth in the caption hereof.

I further certify that the testimony of said witness was taken down in stenograph by me; was thereafter transcribed and reduced to typewriting by myself; and the transcript constitutes a full, true and correct record of the foregoing deposition.

I FURTHER CERTIFY that I am not related to any of the parties named herein, nor their counsel; I am not an agent, attorney or counsel for any of the parties; and I have no interest, financial or otherwise, in the outcome or events of this action.

IN WITNESS WHEREOF, I have hereunto affixed my signature and official seal on April 3, 2026.

*Cheri Sullivan*

CHERI SULLIVAN, RPR, CCR(AR), LCR(TN)
Registered Professional Reporter
Arkansas CCR NO. 247
Tennessee LCR NO. 171, Expires June 30, 2026
Notary Commission Expiration:  March 15, 2028