UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| MARY L. WARREN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:25-cv-02588-SHL-tmp |
| v. | ) | |
| | ) | Judge Sheryl H. Lipman |
| FLYWAY EXPRESS, LLC, | ) | |
| DHL EXPRESS (USA), INC., CLARKE | ) | Magistrate Judge Tu M. Pham |
| WHITE, JR., and | ) | |
| JOHN DOES 2-3, | ) | Jury Demand |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
FLYWAY EXPRESS, LLC AND DHL EXPRESS (USA), INC.'S
MOTION TO EXCLUDE EXPERT TESTIMONY OF DAVID STRAUSER, Ph.D.**

Defendants Flyway Express, LLC ("Flyway") and DHL Express (USA), Inc., ("DHL") (collectively "Defendants"), by and through counsel, hereby file this Memorandum of Law in Support of their Motion to Exclude proffered expert testimony from Plaintiff Mary Warren's ("Plaintiff") expert witness, David Strauser, Ph.D pursuant to Rules 702 and 703 of the Federal Rules of Evidence.

**FACTS AND PROCEDURAL HISTORY**

This action arises from a motor vehicle collision between a vehicle owned and operated by Plaintiff and a delivery van owned by Flyway and operated by Flyway employee Clarke White, Jr. ("Mr. White"). Amended Compl. ¶¶ 13-17, Docket Entry No. 60. On January 30, 2026, Plaintiff filed her Rule 26 Expert Disclosures that identified three expert witnesses, including Dr. David Strauser, Ph.D., as a vocational expert. Docket Entry No. 26 pp. 1-3. As argued more fully below, Dr. Strauser lacks a factual basis for his opinions.

1

## <u>LEGAL STANDARD</u>

A party may not submit expert testimony unless that witness's testimony is first established to be admissible under requirements set forth in Federal Rules of Evidence 702 and 703, Federal Rule of Civil Procedure 26 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993) and its progeny.

Reports by expert witnesses are governed by Federal Rule of Civil Procedure 26, which imposes the following disclosure requirements on expert witnesses who will testify under Fed. R. Evid. 702 and 703. "To qualify as an expert under Rule 702, a witness must first establish his expertise by reference to 'knowledge, skill, experience, training, or education.'" *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000). The rule gives district courts a "gatekeeping role" in screening the reliability of expert testimony. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. at 597. The U.S. Supreme Court, in Daubert and subsequent rulings, has held that "in order to qualify as 'scientific knowledge,' an inference or assertion must be derived by the scientific method. Proposed testimony must be supported by appropriate validation—i.e., 'good grounds,' based on what is known. In short, the requirement that an expert's testimony pertain to "scientific knowledge" establishes a standard of evidentiary reliability." *Daubert*, 509 U.S. at 590.

It is in the discretion of the trial judge to determine "whether the testimony's underlying reasoning or methodology is scientifically valid and properly can be applied to the facts at issue." *Daubert*, 509 U.S. at 581. The Supreme Court has generally identified four items of inquiry to guide trial courts in determining whether expert scientific testimony should be admitted:

(1) whether a theory or technique can be or has been tested;

(2) whether the theory has been subjected to peer review and publication;

(3) whether a potential rate of error has been established; and

(4) whether the theory is "generally accepted."

*Id*. Even where an expert's evidence is ruled admissible under the *Daubert* standards, a district court remains free to decide that the evidence amounts to no more than a mere scintilla. *Id*. at 596; *Hirsch v. CSX Transp., Inc.*, 656 F.3d 359, 362 (6th Cir. 2011). "[N]othing . . . requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* [because I said so] of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Prior to the 2023 amendments to Rule 702, some courts required the proponent of expert testimony to prove to the judge by a preponderance of the evidence that the proposed testimony met the four reliability criteria of Rule 702, while other courts merely presumed admissibility and allowed the jury to determine the weight to give the testimony. The current Rule 702, as amended, clarifies that a proponent of expert testimony must prove—and the court must find by a preponderance of the evidence—that the proposed expert testimony meets Rule 702's four reliability requirements: (1) the expert is qualified, (2) the testimony is supported by sufficient facts or data, (3) the principles and methods are reliable, and (4) the expert has reliably applied those principles and methods. Rule 702 now expressly states that the proponent of the testimony must show that the expert's opinions and conclusions are based on sufficient facts and logically follow from the reliable application of reliable methods. Fed. R. Evid. 702.

Federal Rule of Evidence 703 additionally provides that:

An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703.

3

In addition to the requirements of Rules 702 and 703, the Court must also consider other factors about the reliability of the expert testimony such as "testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation, and general acceptance in the relevant scientific community." *United States v. Langdon*, 263 F.3d 613, 621 (6th Cir. 2001) (citing *Daubert*, 509 U.S. at 593-94). This is particularly crucial when an expert relies heavily on materials or information from other parties The "knowledge" prerequisite in Rule 702 requires "more than subjective belief or unsupported speculation." *Tamraz v. Lincoln*, Elec. Co., 620 F.3d 665, 670 (6th Cir. 2010) (quoting *Daubert*, 509 U.S. at 590). In its inquiry, a trial court should not look to "the qualifications of a witness in the abstract, but [to] whether those qualifications provide a foundation for a witness to answer a specific question." *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994).

However, the factors the Court considers are not strict, rather they are "flexible" while the "overarching subject [should be]… validity" and "reliability." *Kuhmo Tire*, 526 U.S. at 158 (citing *Daubert*, 509 U.S. at 594-595). "The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008).

Courts have "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Madej v. Maiden*, 951 F.3d 364, 374 (6th Cir. 2020) (quoting *Kuhmo Tire*, 526 U.S. at 152 (1999). When the Sixth Circuit has excluded expert testimony, it has usually come from "[d]eficiencies such as an expert's lack of specific and relevant data, lack of relevant testing, overreliance on unhelpful studies unconnected to causation, failure to rule out alternative causes, and failure to comply with court-ordered report submission

deadlines have all justified excluding proposed expert opinion." *Baker v. Blackhawk Mining, LLC*, No. 24-5490, 2025 U.S. App. LEXIS 15389, at *10 (6th Cir. June 23, 2025). Further, courts hold, "an expert's opinion must be supported by more than subjective belief and unsupported speculation and should be supported by good grounds based on what is known." *Endless River Techs., LLC v. TransUnion, LLC*, No. 23-3087/3144, 2025 U.S. App. LEXIS 1201, at *21 (6th Cir. Jan. 17, 2025) (quoting *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800-801 (6th Cir. 2000). Anecdotal evidence is also a red flag when considering the validity of an expert's testimony. *Best v. Lowe's Home Ctrs. Inc.*, 563 F.3d 171, 177 (6th Cir. 2009).

## **LAW AND ARGUMENT**

In carrying out its gatekeeping function, the district court must assess the connection—or "fit"—between an expert's qualifications and the opinions offered. "The fit requirement directs the Court to look beyond the qualifications of a witness in the abstract and focus on whether those qualifications provide a foundation for a witness to answer a specific question." *Johnson v. Manitowoc Boom Trucks, Inc.*, 406 F. Supp. 2d 852, 859 (M.D. Tenn. 2005); *see also U.S. v. Bonds*, 12 F.3d 540, 555 (6th Cir. 1994). "[F]or this kind of testimony to be admissible, a foundation would have to have been laid based upon the witness's firsthand familiarity" with the topics of the expert opinions. *Berry*, 25 F.3d at 1350.

Dr. Strauser's opinions fail Rule 702 at multiple independent stages. His testimony is inadmissible because (1) it is not supported by sufficient facts or data (Rule 702(b)); (2) it is not derived from any reliable vocational methodology (Rule 702(c)); and (3) even if a method were identified, it was not reliably applied to the facts of this case (Rule 702(d)). Each failure independently requires exclusion.

**I.     Dr. Strauser lacks a factual basis to support his opinions regarding Plaintiff's vocational history.**

Rule 702 requires that expert testimony be grounded in "sufficient facts or data." This requirement is not satisfied where, as here, the expert concedes that he lacked critical information concerning Plaintiff's vocational history, earnings, job stability, and pre-existing non-medical barriers to employment.

In his report dated January 30, 2026, Dr. Strauser provided a table summarizing what he understood to be Plaintiff's work history. Strauser Report p. 4, Docket Entry No. 30. Dr. Strauser's summary of Plaintiff's work history contained a six-year gap between 2016 and 2022 with no explanation. In his deposition, when asked about that gap, Dr. Strauser testified that he had only been able to speak with Plaintiff by phone, and that she became "became quite hostile" and terminated the phone call after 30 minutes. Exhibit A, Excerpts from the Deposition of David Strauser, Ph.D. ("Strauser Depo.") p. 25:1-30. Dr. Strauser had not reviewed Plaintiff's deposition testimony prior to forming the opinions contained in his Report. *Id*. at p. 31:16-21. Consequently, Dr. Strauser was not provided with Plaintiff's full employment history and lacked information regarding the duration of her previous jobs and the multiple instances in which she quit due to "family reasons" or was terminated for interpersonal conflicts with supervisors and/or coworkers. *Id*. at p. 38:13-21. For example, Dr. Strauser did not know why her job at McDonalds ended, or that she was terminated due to interpersonal conflicts with her supervisor. *Id*. at p. 44:1-10; Exhibit B, Excerpts from the Deposition of Mary Warren ("Warren Depo.") p. 84:13-21. Dr. Strauser did not know of multiple jobs that Plaintiff had worked previously, including Pilot Travel Center, Love's Travel Center, an in-home health care company, a shipping warehouse, a hotel doing housekeeping work, a manufacturing facility, a food production facility, or as a pizza delivery driver. Strauser Depo. at pp. 40:7-41:11; *see also* Warren Depo. pp. 45:4-17; 58:2-59:17; 63:4-

6

66:7; 73:15-74:8. He did not know that Plaintiff had worked at an inpatient facility dispensing medication to patients and supervising their activities. Strauser Depo. at p. 38:1-9; Warren Depo. pp. 34:15-35:11.

To his credit, Dr. Strauser has been candid about the information he did receive and did not receive and freely admitted he had no information regarding the six-year gap in Plaintiff's work history. Strauser Depo. pp. 36:19-37:9. He also freely admitted that Plaintiff had not provided him with full information regarding her DoorDashing or driving for the rideshare company Lyft. *Id*. at pp. 45:10-46:15. Despite these acknowledged data gaps, however, Dr. Strauser rendered sweeping opinions regarding Plaintiff's lifetime earning capacity and future employability. Opinions founded on such an incomplete factual record fail Rule 702(b) as a matter of law. See *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 670 (6th Cir. 2010) (finding that expert testimony must be supported by more than subjective belief or unsupported speculation). An expert cannot satisfy Rule 702(b) by extrapolating lifetime earnings loss while conceding he lacked fundamental inputs such as job stability, reasons for termination, or sustained earnings history. These facts are central to vocational analysis and constitute the core data. Because Dr. Strauser was not provided with crucial information regarding Plaintiff's work history, he lacked a factual basis to opine on her vocational options in the future, and his opinions should be excluded as lacking factual basis under Federal Rules of Evidence 702.

## II.    Dr. Strauser's opinions regarding Plaintiff's alleged inability to work are unsupported and inconsistent with the record.

In his Report, Dr. Strauser opines without apparent supporting evidence that Plaintiff will never be able to work again, and he calculated an amount of lost earnings over the course of her

expected work life. He wrote that Plaintiff "is currently experiencing a complete vocational loss of earnings." Strauser Report p. 5, Docket Entry No. 30.

However, Dr. Strauser's own report reflects that Plaintiff <u>was driving for Lyft at the time he conducted his half-hour phone assessment of her</u>. *Id.* at p. 4. Despite the fact that she was still working when he spoke to her, Dr. Strauser opined that she would never be able to work again, an opinion that flies in the face of the facts stated in his report. It also is negated by Plaintiff's own account to Dr. Strauser that "when she takes her pain medication, she reports her pain to be a one [out of ten] during the day." *Id*. at p. 3.

Dr. Strauser apparently anticipated that such a baseless opinion would be subject to criticism, because he offered an alternative opinion based on a presumption that Plaintiff would only work part-time in the future. *Id*. at p. 5. Once again, such opinion is devoid of any supporting evidence. Dr. Strauser referenced restrictions given by Apurna Dalal, M.D., in his report as basis for his opinions, but none of the restrictions imposed by Dr. Dalal impose a complete or part-time bar to Plaintiff continuing to work. See Report of Dr. Dalal p. 10, Docket Entry No. 27 p. 11. Dr. Dalal's restrictions were the following:

> LIMITATIONS & RESTRICTIONS: Patient should avoid lifting any weights more than 25 pounds. They should avoid bending, pulling, pushing, and twisting motions of the trunk. Patient should also avoid high intensity exercise and excessive weight-bearing of the lower extremities. Patient was told that losing weight will help lower back, knee, and ankle pain.

*Id.*

Despite Dr. Strauser's assertions, none of those restrictions would completely or partially prevent plaintiff from engaging in jobs such as those she had worked previously including in-patient medication dispensing, supervising, cashier a convenience store, or rideshare driver. And

Plaintiff's self-reported level of "1 out of 10" pain with medication would similarly not prevent her from working a variety of jobs.

### III.    Dr. Strauser failed to reliability apply any vocational methodology.

Even assuming that Dr. Strauser is generally qualified as a vocational expert, his testimony must still be excluded because he failed to reliably apply any vocational methodology to the facts of this case. Rule 702(d) requires courts to ensure that an expert has reliably applied principles and methods to the facts, not merely that such methods exist in the abstract.

Dr. Strauser relied primarily on the Earning Capacity Assessment Form – 2nd Edition (ECAF-2), which he described as a checklist intended to help organize an evaluator's thoughts. Strauser Depo. pp. 51:20-52:15. He acknowledged that the ECAF-2 is not scored, has no outcome-determinative mechanism, has no known error rate, and does not itself generate conclusions. *Id.* pp. 57:6-58:1. He further admitted that the form does not constrain the evaluator's discretion and that its completion necessarily depends on the evaluator's subjective impressions. *Id.*

Because the ECAF-2 does not provide a replicable or testable method for translating data into conclusions, Dr. Strauser's use of that form does not constitute a reliable application of vocational methodology. As a result, his opinions are based on his own assertions rather than on any demonstrable methodology. Rule 702 does not allow expert testimony that depends on such unsupported reasoning, and exclusion is appropriate when an expert cannot explain how the underlying facts reliably led to the opinions offered. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (Rule 702 does not permit expert testimony where "there is simply too great an analytical gap between the data and the opinion proffered.").

## **CONCLUSION**

In summary, Dr. Strauser was not provided sufficient information to form a reliable and accurate opinion about Plaintiff's vocational options, and he attempts to offer opinions that are unsupported by the medical proof and vocational history. Accordingly, Defendants respectfully request that the Court exclude Dr. Strauser's proffered testimony as speculative, unreliable, and inadmissible under Federal Rules of Evidence 702 and 703.

Respectfully submitted:

**LEWIS THOMASON, P.C.**

*/s/ Peter C. Robison*
Peter C. Robison, BPR #27498
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
Phone: 615-259-1343
probison@lewisthomason.com

*/s/ Caroline S. Montoya*
Caroline S. Montoya, BPR #41330
40 S. Main Street, Suite 2900
Memphis, Tennessee 38103
Phone: 901-525-8721
cmontoya@lewisthomason.com

*Counsel for Defendants DHL Express (USA), Inc. and Flyway Express, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certified that on May 1, 2026, the foregoing document was served on the following counsel of record through the Court's electronic filing system:

Henry Reaves, III, Esq.
Carlos Moore, Esq.
Wesley T. Evans, Esq.
Reaves Law Firm
2650 Thousand Oaks Blvd., Suite 3100
Memphis, Tennessee 38118
henry.reaves@beyourvoice.com
carlos.moore@beyourvoice.com
wesley.evans@beyourvoice.com

*Counsel for Plaintiff Mary Warren*

/s/ Peter C. Robison
Peter C. Robison