**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| MARY L. WARREN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:25-cv-02588-SHL-tmp |
| | ) | |
| v. | ) | Judge Sheryl H. Lipman |
| | ) | |
| FLYWAY EXPRESS, LLC, | ) | Magistrate Judge Tu M. Pham |
| DHL EXPRESS (USA), INC., and | ) | |
| JOHN DOES 1-3, | ) | JURY DEMANDED |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

COMES NOW, the Plaintiff Mary Warren, by and through counsel, and respectfully submits, pursuant to Local Rule 56.1(b), Plaintiff submits the following additional material facts as to which there exists a genuine issue to be tried:

**A. DEFENDANTS' VOCATIONAL EXPERT OPINIONS ARE BASED ON INCOMPLETE INFORMATION**

1. Defendants' vocational expert, Dr. David Strauser, testified that he did not review any deposition transcripts before issuing his report. *Strauser Dep. 31:18–21*.

2. Dr. Strauser testified that he did not review any crash reports or police reports related to the subject collision. *Strauser Dep. 31:22–24*.

3. Dr. Strauser testified that he did not review any medical records relating to Plaintiff prior to the date of injury. *Strauser Dep. 31:6–11*.

4. Dr. Strauser testified that his interview with Plaintiff lasted approximately thirty minutes. *Strauser Dep. 30:12–17*.

5. Dr. Strauser testified that he intended to verify information obtained from Plaintiff through records from Plaintiff's counsel but had not done so before preparing his report. *Strauser Dep. 30:18–24.*

6. Dr. Strauser described the interview process with Plaintiff as "hectic" and "scattered." *Strauser Dep. 41.*

## B. DEFENDANTS' EXPERT WAS UNAWARE OF SUBSTANTIAL PORTIONS OF PLAINTIFF'S WORK HISTORY

7. Dr. Strauser testified that he was unaware Plaintiff worked for Points of Light/The Haven. *Strauser Dep.*

8. Dr. Strauser testified that he was unaware Plaintiff worked for Pilot Travel Center. *Strauser Dep.*

9. Dr. Strauser testified that he was unaware Plaintiff worked for Love's Travel Center. *Strauser Dep.*

10. Dr. Strauser testified that he was unaware Plaintiff performed in-home healthcare work. *Strauser Dep.*

11. Dr. Strauser testified that he was unaware Plaintiff worked through temp agencies. *Strauser Dep.*

12. Dr. Strauser testified that he was unaware Plaintiff worked in facilities involving packing and shipping products. *Strauser Dep.*

13. Dr. Strauser testified that he was unaware Plaintiff performed hotel housekeeping work. *Strauser Dep.*

14. Dr. Strauser testified that he was unaware Plaintiff worked in a manufacturing facility producing brooms or similar tools.

15. Dr. Strauser testified that he was unaware Plaintiff worked in food production making

pies. *Strauser Dep.*

16. Dr. Strauser testified that he was unaware Plaintiff worked as a Domino's Pizza delivery driver. *Strauser Dep.*

## C. PLAINTIFF HAS A SUBSTANTIAL WORK HISTORY ACROSS MULTIPLE INDUSTRIES

17. Plaintiff testified that she has worked in healthcare, hospitality, manufacturing, packaging, and related industries. *Warren Dep.*

18. Plaintiff testified that she performed supervisory and caregiving duties in healthcare positions. *Warren Dep.*

19. Plaintiff testified that she worked in positions involving manufacturing, packaging, and shipment preparation. *Warren Dep.*

20. Plaintiff testified that she left certain positions due to family obligations and personal circumstances. *Warren Dep.*

21. Plaintiff testified that she also left employment due to unequal workloads and lack of assistance in the workplace. *Warren Dep.*

22. Plaintiff testified that in one hospitality position, she was assigned over twenty rooms while other employees were assigned substantially fewer rooms. *Warren Dep.*

## D. FLYWAY REQUIRED DRUG SCREENING FOR DRIVERS

23. Brian Cox testified that Flyway required couriers to undergo a drug screen before operating company vans. *Cox Dep. 25:15–18.*

24. Cox testified that Flyway required a clean drug screen before management could "green light" a driver to begin work. *Cox Dep. 25:19–24.*

25. Kellie McBride testified that Flyway policy required drivers to undergo drug screening during onboarding. *McBride Dep. 17:7–11.*

26. McBride testified that safety was considered "extremely important" at Flyway. *McBride Dep. 18:1–9.*

**E. FLYWAY CANNOT CONFIRM THAT DRIVER CLARK WHITE COMPLETED A DRUG SCREEN**

27. McBride testified that Clark White's new-hire checklist lacked a completed checkmark confirming a drug screen. *McBride Dep. 11:19–25; 12:1–2.*

28. McBride testified that she did not physically see any drug-screen documentation for Clark White. *McBride Dep. 13:8–16.*

29. McBride testified under oath that she could not confirm that Clark White's drug screen had actually been completed. *McBride Dep. 13:17–25.*

30. McBride testified that she searched for proof of a drug screen after being asked to look for it. *McBride Dep. 14:21–23.*

31. McBride testified that the company used for drug-screen administration was no longer in business and Flyway no longer had access to those records. *McBride Dep. 14:23–25; 15:1–4.*

32. McBride testified that even after internal review, no one at Flyway could locate proof that White completed a drug screen. *McBride Dep. 15:10–15.*

33. Cox testified that Flyway could not produce documentation proving White completed a drug screen. *Cox Dep. 66:19–25; 67:1–5.*

34. Cox testified that prior managers did not have a "solid recollection" concerning White's drug screen. *Cox Dep. 33*

**F. FLYWAY'S HR AND SAFETY PROCESS WAS FRAGMENTED AND INCONSISTENT**

35. McBride testified that onboarding responsibilities were divided among multiple people

and locations. *McBride Dep. 14:6–10*.

36. McBride testified that she did not personally handle all onboarding steps reflected on the checklist. *McBride Dep. 12:4–11*.

37. McBride testified that she reported to multiple supervisors, including Mike McCord, Brian Cox, and Steve Kriese. *McBride Dep. 9:3–16*.

38. McBride testified that no other HR employees reported to her. *McBride Dep. 9:17–19*.

39. Cox testified that Flyway historically operated as a relatively small company with limited HR infrastructure. *Cox Dep. 12:4–18*.

## G. DEFENDANTS' POST-COLLISION INVESTIGATION WAS LIMITED AND DELAYED

40. Cox testified that White failed to properly report the incident to Flyway management. *Cox Dep. 12-13*.

41. Cox testified that he had not seen any incident report completed by White regarding the May 20, 2024, collision. *Cox Dep. 12-13*.

42. Cox testified that White never verbally explained the incident to management. *Cox Dep. 13*.

43. Cox testified that Flyway determined White would be terminated after learning he had been involved in an unreported incident. *Cox Dep. 13-14*.

44. Cox testified that Flyway began searching "pretty late" for information concerning another possible vehicle involved in the incident. *Cox Dep. 16*.

45. Cox testified that Flyway did not have direct access to facility surveillance cameras. *Cox Dep.*

46. McBride testified that she did not participate in any investigation concerning the collision or the condition of the van. *McBride Dep. 24-25*.

47. McBride testified that she did not know who would have been responsible for conducting such an investigation. *McBride Dep. 25*.

## H. FLYWAY'S SAFETY TECHNOLOGY AND MONITORING SYSTEMS WERE IN TRANSITION

48. Cox testified that Flyway's current fleet includes upgraded dashcams, telematics, and improved video recording systems. *Cox Dep. 17*.

49. Cox testified that at the time of the incident, Flyway was still transitioning its fleet and that "quite a few" vehicles lacked upgraded systems. *Cox Dep. 17-18*.

50. Cox testified that Flyway does not tolerate unsafe or erratic driving. *Cox Dep. 17*.

## I. THESE FACTS CREATE GENUINE ISSUES FOR TRIAL

51. The testimony of Flyway's own witnesses establishes disputes regarding whether Defendants complied with their own mandatory driver-screening procedures before permitting Clark White to operate a commercial delivery vehicle.

52. The testimony further establishes disputes concerning Defendants' supervision, onboarding practices, recordkeeping, safety oversight, post-collision investigation, and preservation of evidence.

53. The testimony of Defendants' vocational expert establishes that his opinions were based on incomplete information and an incomplete understanding of Plaintiff's work history.

54. These disputes are material to Plaintiff's claims for negligent hiring, negligent supervision, negligent retention, negligent entrustment, compensatory damages, and punitive damages.

55. Because reasonable jurors could resolve these disputes in Plaintiff's favor, summary judgment is improper.

Respectfully submitted,

**REAVES LAW FIRM, PLLC**

/s/ Wesley Evans_____
Wesley Evans (MS #9956)
2650 Thousand Oaks Blvd., Suite 3100
Memphis, TN 381118
Tel: (901) 417-7166
Fax: (901) 328-1352
Email: wesley.evans@beyourvoice.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that a true and correct copy of the foregoing *Statement of Additional Facts* is being served via CM/ECF, to all counsel of record for the above-referenced case.

So certified this 12th day of May, 2026.

By: /s/ Wesley Evans
Wesley Evans, Esq.