UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| MARY L. WARREN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:25-cv-02588-SHL-tmp |
| | ) | |
| v. | ) | Judge Sheryl H. Lipman |
| | ) | |
| FLYWAY EXPRESS, LLC, | ) | Magistrate Judge Tu M. Pham |
| DHL EXPRESS (USA), INC., and | ) | |
| JOHN DOES 1-3, | ) | JURY DEMANDED |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

**COMES NOW** the Plaintiff, Mary Warren, by and through undersigned counsel, and respectively files her Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, and in support states as follows:

## I. INTRODUCTION

Defendants contend Plaintiff lacks proof of reckless, malicious, or intentional conduct sufficient to support punitive damages and that no triable issues exist on negligent hiring, supervision, retention, or entrustment. The record presents genuine disputes of material fact on each issue, and Defendants' motion improperly asks the Court to weigh evidence and draw inferences in Defendants' favor.

Flyway's own witnesses testified that mandatory driver drug screening was required before couriers were permitted to operate company vans. Brian Cox testified that couriers were

expected to undergo a drug screen before driving and that a clean drug screen was required before managers could "green light" them to begin driving. *Cox Dep. 25:15–24.* McBride likewise testified she had never seen drug-screen results for Clark White and could not confirm that a drug screen had been completed. *McBride Dep. 13:17–25.*

The record further demonstrates material disputes concerning Defendants' fragmented Human Resources processes, inadequate supervision, and deficient post-collision investigation. Cox admitted Flyway began searching "pretty late" for stored information concerning whether another vehicle was involved. *Cox Dep. 16.* McBride testified she did not participate in any investigation and did not know who would have been responsible. *McBride Dep. 22–25.*

These facts create triable issues under Tennessee law governing negligent hiring, negligent supervision, negligent retention, negligent entrustment, and punitive damages. As detailed below, Defendants cannot obtain summary judgment where the record shows missing proof of mandatory safety steps, unclear responsibility for onboarding and supervision, delayed investigation and preservation efforts, and disputed damages evidence.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence in the light most favorable to Plaintiff and draw all reasonable inferences in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Tolan v. Cotton*, 572 U.S. 650, 657 (2014). Once the movant meets its initial burden, the

2

nonmovant need only identify record evidence showing a genuine dispute of material fact for trial; it need not prove its case at summary judgment.

Under Rule 56(c), factual positions must be supported by citations to particular parts of materials in the record, including depositions, documents, affidavits, admissions, and interrogatory answers. Fed. R. Civ. P. 56(c)(1)(A). Consistent with Local Rule 56.1, Plaintiff relies on the cited deposition testimony and record materials identified herein and in Plaintiff's response to Defendants' statement of facts and Plaintiff's statement of additional material facts.

At this stage, the Court may not weigh the evidence, determine witness credibility, or decide whose version of disputed facts is more persuasive. *Anderson*, 477 U.S. at 255. Where reasonable jurors could differ, summary judgment must be denied.

## III. ARGUMENT

Defendants seek summary judgment on Plaintiff's negligent hiring, supervision, retention, and entrustment claims and on punitive damages. The record presents genuine disputes of material fact on each issue, including (1) whether Defendants complied with mandatory pre-driving drug screening and other qualification steps; (2) whether Defendants' onboarding and HR responsibilities were fragmented such that required safety steps were not reliably verified; (3) whether Defendants' post-collision response and investigation were delayed and inadequate; (4) whether Defendants lacked meaningful monitoring systems for fleet operations at the relevant time; and (5) whether Plaintiff's damages and work-history evidence presents jury questions. These disputes require denial of summary judgment under Rule 56.

3

**A. Genuine disputes exist concerning negligent hiring, screening, and driver qualification.**

Flyway's own testimony establishes that driver drug screening was mandatory before drivers were permitted to operate delivery vans. Cox testified that couriers were expected to undergo a drug screen before driving company vehicles and that a clean drug screen was required before drivers could be "green lit." *Cox Dep. 25:15–24*. McBride testified that White's new hire checklist lacked a completed drug screen confirmation and that she had never seen White's drug screen results. *McBride Dep. 11:19–25; 13:17–25*.

Cox later estimated there was only a "90 percent chance" White had been drug tested but admitted Defendants could not produce proof and had been unsuccessful in locating records. Cox *Dep. 32*. Tennessee law squarely supports Plaintiff's negligent hiring theory.

Tennessee courts impose liability where an employer "knew or should have known of an employee's unfitness" and failed to exercise reasonable care in hiring or screening. *Doe v. Catholic Bishop for Diocese of Memphis*, 306 S.W.3d 712, 717 (Tenn. Ct. App. 2008); *Gunter v. Estate of Armstrong*, 600 S.W.3d 916, 927–28 (Tenn. 2020).

Courts also hold that an employer's failure to follow its own safety policies supports negligent hiring and supervision claims. *Phipps v. Walker*, 2016 WL 5723950, at 6 (Tenn. Ct. App. Sept. 30, 2016). And failure to conduct adequate background checks or follow internal procedures is actionable.

Flyway's inability to verify a mandatory drug screen—combined with missing checklist items and inconsistent testimony—creates a textbook jury question under *Gunter* and *Phipps*. A

4

reasonable jury could conclude that Flyway failed to exercise reasonable care in hiring White and entrusted a commercial vehicle to a driver whose qualifications were never verified. Summary judgment must be denied.

**B. Defendants' fragmented HR process creates a jury question concerning negligent supervision and safety oversight.**

McBride testified that her HR responsibilities included onboarding documents, background checks, badges, TSA STA applications, and training logs. *McBride Dep. 9:20–25; 10:1.* She used a new-hire checklist during White's onboarding. *McBride Dep. 11:16–23.* Yet she also testified that other personnel handled portions of the onboarding process and that she did not oversee all required steps. *McBride Dep. 12:4–11.*

Cox testified that McBride "runs the HR" and that Flyway historically operated with limited HR infrastructure. *Cox Dep. 12:4–18.*

**Tennessee law recognizes negligent supervision where safety procedures are fragmented or inadequately enforced.**

"A plaintiff in Tennessee may recover for **negligent** hiring, **supervision** or retention of an employee if he establishes, in addition to the elements of a negligence claim, that the employer had knowledge of the employee's unfitness of the job." *Doe v. Catholic Bishop for Diocese of Memphis*, 306 S.W.3d 712, 717 (Tenn. Ct. App. 2008) (citing *Phipps v. Walker*, No. 03A01-9508-CV-00294, 1996 WL 155258, at *3 (Tenn. Ct. App. W.S., April 4, 1996)). Liability also arises where inadequate training or fragmented oversight foreseeably results in harm.

5

**Application to this case**

Flyway's decentralized and inconsistently documented onboarding process—combined with missing checklist items and lack of clarity about who was responsible for verifying safety requirements—fits squarely within the negligent-supervision framework recognized in *Smith* and *Leatherwood*. A jury could reasonably infer that Flyway's fragmented HR structure resulted in failures to verify mandatory safety steps, including drug screening and driver qualification.

Accordingly, summary judgment on Plaintiff's negligent supervision (and related negligent retention) theories should be denied.

**C. Defendants' post-collision response and investigation create additional factual disputes.**

Cox testified that White failed to report the collision, failed to complete an incident report, and never verbally explained what occurred. *Cox Dep.* 12-13. Cox further acknowledged that Flyway began searching "pretty late" for stored information concerning another vehicle and lacked direct access to facility cameras. *Cox Dep. 16.* McBride testified she did not participate in any investigation and did not know who would have been responsible. *McBride Dep.22–25*

**Tennessee law treats failures to investigate or preserve evidence as evidence of negligence.** The Tennessee Supreme Court recognizes that failures to investigate or preserve evidence can support negligence claims and justify adverse inferences. *Tatham v. Bridgestone Americas Holding, Inc.*, 473 S.W.3d 734, 748–49 (Tenn. 2015).

6

The Sixth Circuit likewise holds that an employer's failure to investigate or supervise an employee despite red flags creates a jury question. *Doe v. Magoffin County Fiscal Court*, 174 F. App'x 962, 973 (6th Cir. 2006).

**Application to this case**

Flyway's delayed search for evidence, lack of access to surveillance footage, absence of an incident report, and failure to conduct a meaningful investigation fall squarely within the concerns addressed in *Tatham* and *Magoffin County*. A reasonable jury could conclude that Flyway's investigation and preservation efforts were inadequate.

Accordingly, summary judgment should be denied to the extent Defendants seek dismissal of Plaintiff's negligent supervision/retention and related negligence theories based on the adequacy of their investigation and preservation efforts.

**D. Defendants' safety technology testimony supports a finding of preventable risk.**

Cox testified about the types of monitoring tools available to Flyway for fleet operations, including dashcams, telematics, and video recording systems. When asked about the fleet operating on May 20, 2024, Cox testified that Flyway had been transitioning vehicles and that "quite a few" vehicles on the road at that time lacked upgraded dashcams and telematics. *Cox Dep. 17*. This testimony is offered to show the extent of monitoring and oversight in place at the time of the incident—not to suggest that later changes establish liability.

Cox further testified that Flyway does not tolerate erratic or unsafe driving. *Cox Dep. 17*. A reasonable jury could nevertheless conclude that Defendants' failure to ensure adequate monitoring systems, combined with missing proof of mandatory drug screening and an

7

inadequate investigation, reflected insufficient supervision and reckless disregard for public safety.

These facts are material to punitive damages because they concern Defendants' knowledge of safety risks, foreseeability of unsafe driving, and conscious disregard of known dangers associated with commercial delivery operations.

**E. Plaintiff's damages and work-history evidence present jury issues.**

Defendants' damages arguments likewise cannot be resolved on summary judgment because the record contains disputed evidence concerning Plaintiff's work history, vocational background, and earning capacity.

Defendants' vocational expert, Dr. David Strauser, admitted he did not review pre-incident medical records, did not review deposition transcripts before issuing his report, and did not review crash reports or police reports. *Strauser Dep. 31:6–24*.

Strauser further testified that his interview with Plaintiff lasted approximately thirty minutes and that he intended to verify work-history information with Plaintiff's counsel but had not done so before completing his report. *Strauser Dep. 25*.

Strauser admitted he was unaware of numerous portions of Plaintiff's employment history, including work involving healthcare, temp agencies, manufacturing, hotel housekeeping, food production, warehouse packaging, and delivery driving. *Strauser Dep. 36, 38, 40 & 41*.

Strauser additionally described the interview process with Plaintiff as "hectic" and "scattered." *Strauser Dep. 40-41*.

8

Because Strauser's opinions are based on incomplete information and because Plaintiff's actual work history and post-incident limitations remain disputed, a jury must resolve competing evidence bearing on loss of earning capacity, vocational options, and future economic damages.

**F. The record supports punitive damages.**

Under Tennessee law, punitive damages are appropriate where a defendant acts intentionally, fraudulently, maliciously, or **recklessly**. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992). Recklessness occurs where the defendant is aware of, but consciously disregards, a substantial and unjustifiable risk.

**Tennessee courts repeatedly uphold punitive damages where safety procedures are ignored.** Punitive damages are appropriate where a defendant knew of a dangerous condition and failed to correct it. *Flax v. DaimlerChrysler Corp.*, 272 S.W.3d 521, 536 (Tenn. 2008).

They are also appropriate where a defendant fails to implement or enforce safety systems despite known risks. *Meals v. Ford Motor Co.*, 417 S.W.3d 414, 420–21 (Tenn. 2013). Punitive damages may be imposed where the defendant's conduct constitutes a "gross deviation" from ordinary care. *Sanford v. Waugh & Co.*, 328 S.W.3d 836, 849 (Tenn. 2010). Failure to follow known mandatory procedures constitutes recklessness. *Culbreath v. First Tennessee Bank*, 44 S.W.3d 518, 528 (Tenn. 2001).

The record here supports a reasonable jury finding of reckless disregard.

`Flyway required clean drug screens before drivers could operate company vans, yet Defendants cannot prove White was ever drug tested. *Cox Dep. 25:15–24; McBride Dep. 13:17–25*. Within approximately one day, Flyway learned White had been involved in a serious unreported incident

9

warranting termination, yet Defendants had no incident report and no verbal explanation from White, and they began searching "pretty late" for evidence regarding another vehicle. *Cox Dep. 16.* Cox also testified that, at the time of the collision, numerous fleet vehicles lacked upgraded dashcams and telematics. *Cox Dep. 17.*

A jury may also consider that Flyway lacked direct access to facility surveillance cameras. *Cox Dep. 13.* Viewed collectively, this evidence permits a reasonable jury to conclude Defendants acted with reckless disregard for public safety. Because a jury could find Defendants were aware of, but consciously disregarded, a substantial and unjustifiable risk—conduct amounting to a gross deviation from the standard of care—punitive damages must be submitted to the jury and summary judgment must be denied.

In sum, the record contains multiple independent disputes of material fact: whether Defendants verified mandatory pre-driving drug screening and other qualification steps (Section A); whether Defendants' fragmented onboarding and supervision structure caused those safety steps to go unverified (Section B); whether Defendants' delayed post-collision response and preservation efforts were reasonable (Section C); whether Defendants had meaningful contemporaneous monitoring tools in place for fleet safety (Section D); and whether Plaintiff's damages evidence—including the foundation for Defendants' vocational opinions—presents jury questions (Section E). Considering this evidence together (Section F), a reasonable jury could find negligence and reckless disregard under Tennessee law. Accordingly, Defendants' Motion for Summary Judgment should be denied.

**IV. CONCLUSION**

10

The record contains genuine disputes of material fact concerning Defendants' driver-screening process, HR oversight, safety procedures, post-collision investigation, vehicle monitoring systems, and Plaintiff's damages. Defendants' own witnesses supplied testimony from which a reasonable jury could find negligent hiring, negligent supervision, negligent retention, negligent entrustment, and reckless disregard sufficient to support punitive damages.

For these reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion for Summary Judgment.

Respectfully submitted,

**REAVES LAW FIRM, PLLC**

/s/ Wesley Evans_____
Wesley Evans (MS #9956)
2650 Thousand Oaks Blvd., Suite 3100
Memphis, TN 381118
Tel: (901) 417-7166
Fax: (901) 328-1352
Email: wesley.evans@beyourvoice.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that a true and correct copy of the foregoing *Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment* is being served via CM/ECF, to all counsel of record for the above-referenced case.

So certified this 11th day of May, 2026.

By: /s/ Wesley Evans
Wesley Evans, Esq.

12